Filed 12/28/23  P. v. Smith CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FIVE

| | |
|---|---|
| THE PEOPLE, Plaintiff and Respondent, v. DAZJOHIN RENE SMITH, Defendant and Appellant. | B323968 (Los Angeles County Super. Ct. No. TA152774) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Laura R. Walton, Judge.  Affirmed as modified.

Susan Morrow Maxwell, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Susan Sullivan Pithey, Senior Assistant Attorney General, Jason Tran, Supervising Deputy Attorney General, and Taylor Nguyen, Deputy Attorney General, for Plaintiff and Respondent.

A jury convicted defendant Dazjohin Smith (defendant) of conspiracy to commit murder, among other charges.  The key evidence at trial was surveillance video footage that showed defendant as a passenger in a vehicle driven by someone else in the territory of a rival gang, the vehicle pausing after passing a parked car occupied by other men, and the vehicle then parking around the corner—whereupon defendant exits, walks back to the parked car, fires several gunshots at the occupants inside, and flees back to the waiting getaway vehicle.  We are asked to decide whether the video footage combined with the other evidence admitted at trial is substantial evidence of an advance agreement to commit murder sufficient to support a conspiracy conviction.

## I.  BACKGROUND

### A.  *The Offense Conduct, as Established by the Evidence at Trial*

Brothers Raymond Carrizoza (Raymond) and Osvaldo Carrizoza (Osvaldo) were sitting in a car with three friends around 3:30 p.m. on February 3, 2019.  It was Super Bowl Sunday, and the men were smoking marijuana before the game.  They were parked on 152nd Street near the intersection with Dwight Avenue in Compton.

Someone suddenly began firing gunshots at the car, and everyone but Raymond ducked—he had "nowhere to hide" in the rear middle seat.  A bullet fragment lodged in Raymond's forehead near the temple, but he was quickly taken to the hospital and survived.  Los Angeles County Sheriff's Department (LASD) deputies found six nine-millimeter shell casings at the scene.

2

Nobody in the car belonged to a gang, but the intersection of 152nd and Dwight lies within territory claimed by the Compton Varrio 155 street gang. A rival gang, Park Village Compton Crips, claims territory immediately to the east. There is a history of violent conflict between the two gangs, and both Raymond and Osvaldo noticed new Park Village Compton Crips graffiti in the area after the shooting.

An LASD detective obtained surveillance video of the area after the shooting. The video, admitted at trial, includes views from three different cameras. A small, black, four-door vehicle is shown driving westbound on 152nd toward Dwight and stopping at a stop sign for about 15 seconds despite there being no cross traffic. The vehicle turns left at Dwight and stops along a curb outside a residence, partially blocking a driveway. The rear driver's side door opens about 10 seconds later, and a man exits a few seconds after that.

The man, who is wearing a dark colored hoodie with a distinctive logo on the back and is later identified as defendant, crosses the street and walks back around the corner toward the victims' parked car. Defendant draws a gun, fires multiple shots, and runs back in the direction of the small black vehicle in which he arrived. Someone opens the rear driver's side door of the vehicle from the inside before defendant reaches the vehicle, and the vehicle speeds off once defendant is back inside. This all takes less than a minute.

Investigators also obtained photos posted on social media that show defendant associating with known Park Village Compton Crips members and making hand signs associated with the gang. Defendant also posted images disrespecting Compton Varrio 155 and suggesting he had committed a violent act against

the gang.  In addition, just minutes after the shooting, defendant sent a message on a social media platform to Park Village Compton Crips members and associates warning about police in the area.  He sent another message to the same group not long thereafter warning that Compton Varrio 155 members might seek to retaliate for the shooting.

### B.  *Verdict and Sentencing*

Defendant was charged with conspiracy to commit murder (Pen. Code,[1] § 182, subd. (a); count one),[2] five counts of attempted willful, deliberate, and premeditated murder (§§ 664, 187; counts two through six), and shooting at an occupied motor vehicle (§ 246; count seven).  As to the conspiracy count, the information alleged the following overt acts: "1.  Conspirator traveled in a car to a rival gang's location [¶] 2.  Conspirator brought a semi-automatic firearm [¶] 3.  Conspirator exited car with a semi-automatic firearm [¶] 4.  Conspirator fired multiple rounds at victim's car [¶] 5.  Conspirator ran back to car [¶] 6.  Conspirator fled location."  Firearm, Three Strikes Law, and great bodily injury enhancements were also alleged.  The jury convicted

---

[1]  Undesignated statutory references that follow are to the Penal Code.

[2]  A magistrate determined at a preliminary hearing that there was insufficient evidence to hold defendant to answer for conspiracy to commit murder, but the prosecution re-filed the charge and the court denied defendant's motion to set it aside.

4

defendant on all counts and found the firearm and great bodily injury allegations true.[3]

The trial court sentenced defendant to 13 years to life in prison. This includes a life sentence for the attempted murder of Raymond plus three years for the great bodily injury enhancement and 10 years for the firearm enhancement. As we discuss *post* in connection with correcting a minor error, the sentence the court imposed for the conspiracy to commit murder conviction (as distinguished from the substantive attempted murder convictions, one of which served as the basis for the operative 13 years to life sentence) was stayed by the trial court pursuant to section 654.

## II. DISCUSSION

Defendant contends the conspiracy conviction is not supported by substantial evidence because there is no evidence of an agreement between defendant and anyone else to kill the victims. We hold the surveillance video footage combined with associated trial testimony is adequate to support the jury's finding that defendant and at least the vehicle's driver formed the requisite advance agreement, even if tacit, to kill the victims. (See generally *People v. Calhoun* (1958) 50 Cal.2d 137, 144 ["It is settled that a conspiracy may be established by direct evidence or circumstantial evidence, or a combination of both. It need not be shown that the parties entered into a definite agreement, but it is

---

[3] The trial court granted the prosecution's motion to strike defendant's prior strike conviction in the interest of justice. The verdict forms did not ask the jury to make a finding regarding the great bodily injury allegation for one of the two counts as to which it was alleged.

5

sufficient if they positively or tacitly come to a mutual understanding to accomplish the act and unlawful design"].)

### A. Substantial Evidence Supports Defendant's Conspiracy Conviction

The crime of conspiracy "has four elements: (1) the existence of an agreement between at least two persons; (2) the specific intent to agree to commit an offense; (3) the specific intent to commit the offense that is the object of the agreement; and (4) an overt act in furtherance of the conspiracy, which may be committed by any conspirator. [Citations.]" (*People v. Ware* (2022) 14 Cal.5th 151, 163.) A person may be prosecuted for conspiring with unknown co-conspirators. (*People v. Roy* (1967) 251 Cal.App.2d 459, 463.)

With respect to the first element—the existence of an agreement between defendant and at least one other person to commit an offense—the agreement may be either express or tacit. (*People v. Maciel* (2013) 57 Cal.4th 482, 515; *Calhoun*, *supra*, 50 Cal.2d at 144.) No direct evidence is required, and "such agreement must often be proved circumstantially." (*People v. Homick* (2012) 55 Cal.4th 816, 870.) "'"The existence of a conspiracy may be inferred from the conduct, relationship, interests, and activities of the alleged conspirators before and during the alleged conspiracy."' [Citations.]" (*Maciel*, *supra*, at 515-516.)

Here, the video showing defendant exiting and re-entering the small black vehicle through a passenger door reveals someone else was driving. The video also shows that seconds after passing the victims' car, the driver stopped at a stop sign for an extended

6

period for no discernible reason.[4]  There was then a further brief delay after the black vehicle parked and before defendant got out of the vehicle and walked to where the shooting occurred.  These delays gave defendant and the driver ample opportunity to form the requisite plan to kill.  (See, e.g., *People v. Jurado* (2006) 38 Cal.4th 72, 121 [citing evidence that the defendant and co-conspirators "were alone together . . . shortly before [a] killing, during which a discussion and agreement could have taken place"].)

Additional circumstances support the jury's finding of an advance agreement to kill.  When the driver of the black vehicle turned the corner and stopped along the curb, the video evidence suggests the driver had no intention of stopping for long: the driver did not exit the vehicle, the driver was apparently unconcerned about blocking a driveway, and, when defendant came running back, the vehicle was still running and the passenger door was opened for him before he reached the vehicle.[5]  Especially when these circumstances are combined with the evidence of defendant's Park Village Compton Crips affiliation and the location of the shooting in rival Compton Varrio 155

---

[4]     Defendant suggests this pause may be explained by the presence of a pedestrian "on the corner across the street . . . ."  But the pedestrian was at the only corner of the intersection from which they would *not* interfere with the vehicle's left turn by crossing the street.

[5]     The record also provides no reason to think the vehicle's driver would have been unable to hear the six shots defendant fired around the corner from where they stopped—less than a minute away by foot—before defendant came running back to the vehicle.

territory, the jury had a proper basis to find beyond a reasonable doubt that defendant and the driver agreed on a plan to kill the victims, with the driver being ready to make a quick getaway.[6] (*Jurado, supra,* 38 Cal.4th at 121 [holding that a jury could infer that the person driving the car in which the defendant killed someone conspired in the murder because, among other things, "she did not separate herself from [the] defendant"].)

Defendant does not dispute that the other elements of a conspiracy to commit murder are satisfied, and for good reason. Both his specific intent to kill and the commission of overt acts toward that object are established by the same facts—his firing several shots at an occupied vehicle in territory claimed by a rival gang, striking one of the occupants, and fleeing—as his convictions for attempted murder that are not challenged on appeal. (*People v. Canizales* (2019) 7 Cal.5th 591, 602 ["To prove the crime of attempted murder, the prosecution must establish 'the specific intent to kill and the commission of a direct but ineffectual act toward accomplishing the intended killing'"]; *Ware, supra,* 14 Cal.5th at 164 ["Even if the prosecution had presented no evidence of any other overt act, the attempted murder conviction of an alleged coconspirator in furtherance of

---

[6] Defendant argues the driver may not have known he was armed because he did not draw his gun until just before he fired on the victims. But the fact that defendant kept the gun concealed until ready to fire while outside the vehicle on foot in a rival gang's territory says nothing about whether he had it concealed while inside the vehicle. Moreover, nothing in the video footage or trial testimony gives any reason to believe the driver was surprised by hearing the gunshots that rang out before defendant came running back to the vehicle.

the conspiracy is sufficient to show the overt act element has been satisfied"].)  We shall therefore affirm the conspiracy conviction.

     *B.     The Abstract of Judgment Must Be Corrected*

In its oral pronouncement of defendant's sentence, the trial court imposed but stayed, pursuant to section 654, a sentence of 25 years to life in prison on the conspiracy to commit murder charge.  This is not reflected in the abstract of judgment, which indicates this sentence is consecutive.  Because, as the parties agree, the oral pronouncement controls (*People v. Zackery* (2007) 147 Cal.App.4th 380, 385), we will order preparation of a corrected abstract of judgment.

DISPOSITION

The clerk of the superior court shall prepare an amended abstract of judgment that indicates defendant's sentence on count one (conspiracy to commit murder) was stayed pursuant to section 654. The court shall deliver the amended abstract to the Department of Corrections and Rehabilitation. In all other respects, the judgment is affirmed.


NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS



BAKER, Acting P. J.

We concur:


MOOR, J.


KIM, J.